**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| STAR CREEK CENTER, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:17-cv-00607 |
| | § | |
| SENECA INSURANCE COMPANY, INC. | § | |
| | § | **JURY DEMANDED** |
| Defendant. | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Star Creek Center, LLC, Plaintiff herein, files this Original Complaint against Defendant Seneca Insurance Company, Inc. and, in support of its causes of action, would respectfully show the Court the following:

**I.
THE PARTIES**

1. Star Creek Center, LLC ("Star Creek") is a limited liability company that is a citizen of the State of Texas and all its members are citizens of the State of Texas.

2. Defendant Seneca Insurance Company, Inc. ("Seneca") was, and is at the date of this filing, a New York corporation with its principal place of business in New York, and Seneca is therefore not a citizen of the State of Texas for diversity purposes. Seneca does not maintain a registered agent for service in Texas. Accordingly, Seneca may be served by certified mail to the Texas Commissioner of Insurance under Tex. Ins. Code § 804.201.

**II.
JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction of this cause of action under 28 U.S.C. § 1332.

4. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Texas, Sherman Division. The properties at issue in this cause are located in the Eastern District of Texas, Sherman Division.

## III.
## FACTUAL BACKGROUND

5. Star Creek is the named insured under Seneca Policy CMP 4801095 ("Policy") providing coverage for the perils of hail and wind to commercial properties located at 969 Sam Rayburn Tollway, Allen, Texas 75013 and 977 Sam Rayburn Tollway, Allen, Texas 75013 (collectively "Properties") for the term of the Policy from August 26, 2015 to August 26, 2016. The coverage limits for the Properties for with Plaintiff paid Seneca insurance premiums collected by Seneca includes the following: Premise 1 Building 1 977 Sam Rayburn – Allen, TX 75034 $2,629,000.00 and Premise 2 Building 1 969 Sam Rayburn – Allen, TX 75034 $871,000.00.

6. On April 11, 2016, the Properties sustained catastrophic damage caused by wind and hail. On April 20, 2016, the Texas Commissioner of Insurance issued a Bulletin in accordance with Texas Insurance Code §542.059 and 28 TAC §5.9303, advising the Texas Department of Insurance had determined the weather-related event that occurred April 11, 2016 through April 13, 2016, in the counties of Bexar, Collin, Denton, Dallas, Guadalupe, Montague, Rockwall, Wise, Medina, and Gonzales constituted a catastrophe for purpose of claims processing.

7. Star Creek subsequently filed a claim on its Policy for the extensive damage to its Properties, including its roofing systems, caused by the covered perils of wind and hail.

8. Seneca acknowledged receipt of the claim and commencement of its investigation on or about May 12, 2016.

9. Seneca subsequently retained the services of adjuster Todd Gilmore of Engle Martin & Associates for the purposes of adjusting the claim.

10. Todd Gilmore inspected the Properties with Star Creek's licensed public adjuster on May 18, 2016.

11. Seneca then subsequently retained the services of Haag Engineering to determine the scope of the hail and wind related damages to the Properties.

12. Haag Engineering purportedly inspected the Properties on June 9, 2016.

13. Seneca issued a letter dated June 10, 2016 to Star Creek stating that while the letter was not to be construed as a denial of the claim, Seneca was reserving all its rights while it investigated the facts and circumstances surrounding the loss.

14. On June 30, 2016, after being retained by Seneca, Haag Engineering issued a report drafted by engineer Carlos Lopez. In the report, Lopez acknowledges hail two (2) inches in diameter in Allen, Texas on the date of loss. Lopez's report notes he accessed data from a web site company called Core Logic which placed estimated hail of 1.6 inches in diameter near the loss locations on the date of the loss. Lopez's report concludes it would take 2-inch diameter hail to cause structural damage to these types of roofs (EPDM). Lopez's report is devoid of any core sample testing to determine structural damage to the roofing membranes. Despite acknowledging 2" diameter hail in the Allen, Texas area on the date of loss and acknowledging 2" diameter hail will cause structural damage to an EPDM membrane system and despite failing to conduct any core sample analysis, Haag concluded the hail at issue did not cause structural damage to the roofing membranes despite concluding extensive hail damage was caused to the Properties' HVAC units.

15. On July 11, 2016 engineer Samantha Renz issued a report concluding unusual weather events causing widespread large hail, and winds of a damaging magnitude, were recorded in the immediate area of the Properties during the timeframe of April 11, 2016. Renz opined the observed damage was due to the April 11, 2016 storm. Renz concluded the following in her expert engineering report: (1) there have been at least a few other reports of sporadic small hail in the vicinity in the past year, with signatures of ≤ 0.75" which is generally accepted as too small to cause significant damage; (2) the roof systems and accompanying systems have been subjected to a damaging act of nature; and damage consistent with large hail, wind, and possibly foot traffic was observed; (3) in the current state the roof system is unable to perform as intended; (4) several HVAC coils should be replaced, others should have the fins combed as necessary; (5) parapet cap flashing should be replaced; (6) EPDM membrane and substrate should be replaced in order to address any bruising to the substrate paper face, and maintain the integrity and functionality of a properly installed direct adhered membrane; and (7) fixtures and appurtenances should be checked for proper placement and function, and secured properly.

16. By letter dated December 7, 2016, Star Creek's licensed adjuster sent Seneca D.A. Lamont's estimate of damages for the Properties, photographs, roof Cads, a CORE Forensics Lab Report and supporting weather data demonstrating a direct covered loss to the Properties under the Policy.

17. On December 8, 2016, Seneca received the results of the laboratory analysis of the core samples taken from the roofing system demonstrating structural hail damage to the Properties.

18. On January 9, 2017, Star Creek's licensed public adjuster issued correspondence to Seneca enclosing a copy of the engineering report submitted by Ms. Samantha Renz, P.E. of Evolving Civil Engineering & Planning addressing the date of loss, physical evidence on site as

well as Renz's opinion on the extent of damage. This correspondence also answered Seneca's inquiries on the chain of custody and testing of the core samples demonstrating structural damage. Star Creek's licensed adjuster also advised Seneca of its conclusion the roofing systems should be replaced and that position had not changed.

19. On January 10, 2017 Seneca acknowledged it received Renz's engineering report from a representative of Star Creek along with eight photographs of the core samples analyzed confirming hail damage to the roofing systems and the need for replacement.

20. On March 21, 2017, over ten (10) months after acknowledging receipt of the claim, Seneca issued correspondence stating it was paying the undisputed hail damage to the HVAC units of the Properties <u>but was denying the claim for hail damage to the roofs stating there was no covered hail damage to the roofs of the Properties under the terms of the Policy</u>.

21. On May 5, 2017 Seneca issued a denial of Star Creek's request to participate in the appraisal process under the Policy asserting appraisal was not proper because of outstanding issues regarding causation <u>and scope of the damage</u>. Despite identifying the appraisal provision in the Policy provides appraisal is appropriate when there is a disagreement over the amount of the loss, i.e., the scope of the damage, and despite Seneca acknowledging there was a disagreement over the scope of the damage to the roof by written correspondence, Seneca advised it would not agree to appraisal contrary to the Policy's terms.

22. Seneca performed an outcome-oriented investigation resulting in a biased, unfair and inequitable evaluation of Star Creek's covered loss. Further, Seneca's investigation was substandard at best and pre-determined the outcome before all facts were known. Further, it took over 10 months for Seneca to render a decision at all, well past the allotted statutory deadlines. Worse yet, Seneca misrepresented the terms of the Policy to Star Creek.

# IV.
# CAUSES OF ACTION

23. Each of the foregoing paragraphs is incorporated by reference in the following:

**A.  Breach of Contract**

24. Seneca had a contract of insurance with Plaintiff. Seneca breached the terms of that contract by wrongfully denying the claim and Plaintiff was damaged thereby.

**B.  Prompt Payment of Claims Statute**

25. The failure of Seneca to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

26. Plaintiff, therefore, in addition to Plaintiff's claim for damages, is entitled to 18% interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

**C.  Bad Faith/Deceptive Trade Practices Act ("DTPA")**

27. Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

28. Defendant violated Section 541.051 of the Texas Insurance Code by:

   (1) making statements misrepresenting the terms and/or benefits of the policy.

29. Defendant violated Section 541.060 by:

   (1) misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

   (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

  (3) failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

  (4) failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and

  (5) refusing to pay the claim without conducting a reasonable investigation with respect to the claim;

30. Defendant violated Section 541.061 by:

  (1) making an untrue statement of material fact;

  (2) failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made;

  (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

  (4) making a material misstatement of law; and

  (5) failing to disclose a matter required by law to be disclosed.

31. At all material times hereto, Plaintiff was a consumer who purchased insurance products and services from Defendant.

32. Defendant has violated the Texas DTPA in the following respects:

  (1) Defendant represented that the agreement confers or involves rights, remedies, or obligations which it does not have, or involve, or which are prohibited by law;

  (2) Seneca failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed;

  (3) Seneca, by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by Section 17.50(a)(1)(3) of the DTPA in that Seneca took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Texas Insurance Code.

33. Defendant knowingly committed the acts complained of. As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

**D. Breach of the Duty of Good Faith and Fair Dealing**

34. Defendant Seneca's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to Plaintiff.

35. Defendant Seneca's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, Defendant Seneca knew or should have known by the exercise of reasonable diligence that its liability was reasonable clear, constitutes a breach of the duty of good faith and fair dealing.

<div align="center">

**KNOWLEDGE**

</div>


36. Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

**E.     Attorneys' Fees**

37. Plaintiff engaged the undersigned attorney to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

38. Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because Plaintiff is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

39. Plaintiff further prays that Plaintiff be awarded all reasonable attorneys' fees incurred in prosecuting Plaintiff's causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## V.
## CONDITIONS PRECEDENT

40. All conditions precedent to Plaintiff's right to recover have been fully performed, or have been waived by Defendant.

## VI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Star Creek Center, LLC, prays that, upon final hearing of the case, it recover all damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Star Creek Center, LLC be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment

interest, and such other and further relief, general or special, at law or in equity, to which Star Creek Center, LLC may show itself to be justly entitled.

                Respectfully submitted,

                **HOSSLEY & EMBRY, LLP**

              By: */s/ Christopher P. Peirce*
                   Jeffrey T. Embry
                   State Bar No. 24002052
                   jeff@hossleyembry.com
                   Christopher P. Peirce
                   State Bar. No. 24046604
                   cpeirce@hossleyembry.com
                   515 S. Vine Ave.
                   Tyler, Texas 75702
                   (903) 526-1772
                   (903) 526-1773 (fax)
                   **ATTORNEYS FOR PLAINTIFF**
                   **STAR CREEK CENTER LLC**